**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1971
_____

ROBERT MCCLENAGHAN; NINA HELLER,
                                        Appellants

v.

MELISSA TURI; GUY TURI, H/W; ZIARA BIERIG, Nee Arden;
BEN BIERIG, H/W; LABORATORY CORPORATION OF AMERICA HOLDINGS
AND SUBSIDIARIES AND AFFILIATES, Collectively known as "LabCorp";
PATRICIA SPRAGUE; KEVIN KRUTNER; THE DO GOOD CHARITABLE
FOUNDATION, a/k/a and/or d/b/a GUATADOPT.COM
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 5-09-cv-05497)
District Judge: Honorable Petrese B. Tucker
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 20, 2014

Before:   CHAGARES, GREENAWAY, JR., and VANASKIE, *Circuit Judges*

(Filed: May 28, 2014)
_____

OPINION
_____

VANASKIE, *Circuit Judge.*

Appellants Robert McClenaghan and Nina Heller ran an internet-based adoption agency, Main Street Adoptions. In their telling, after years of success in placing foreign-born children with American families, they suffered an unanticipated setback in early 2008 when the Guatemalan government effectively ceased all international adoptions from that country. Some couples who sought to adopt Guatemalan children using Main Street Adoptions during this period were left with a different impression—that the agency had knowingly preyed on couples desperate to adopt from Guatemala, stringing them along to believe that their adoption was moving forward and scamming them out of money in the process. Those who felt duped took to online message boards and consumer complaint websites, such as ripoffreport.com, to commiserate and warn others.

Appellants brought this defamation, trade libel, and intentional interference with contractual relations action on November 18, 2009, seeking damages from various defendants who had published disgruntled internet posts about Main Street Adoptions. This appeal concerns the statute of limitations for defamation claims under Pennsylvania law, which we recently examined at length in our decision in *In re Phila. Newspapers, LLC*, 690 F.3d 161, 173-75 (3d Cir. 2012). Because the District Court's instructions to the jury did not reflect that, under Pennsylvania law, each internet post could constitute a separate tortious act, governed by the applicable one-year statute of limitations, we will vacate the judgment in part and remand for further proceedings.

I.

In early 2007, Appellee Melissa Turi, along with her husband Guy Turi, contacted Main Street Adoptions seeking to adopt a child from Guatemala. Although the parties disagree as to why several attempts at adoption fell through, neither party disputes that Turi was not left a satisfied customer. In early 2008, Turi began to air her grievances by posting adverse information about Main Street Adoptions on various locations on the internet. Some of Turi's posts were published on publicly-accessible websites that a person searching the internet for information about Main Street Adoptions might come across after a simple search. Other posts were published in a private Yahoo Group consisting of parents seeking to adopt. The content of such posts was not searchable by non-members.

According to Appellants, negative internet posts, including those made by Turi, caused Main Street Adoptions harm in the marketplace, forcing them to close in July 2009. Appellants brought suit against Turi and others who had published negative internet posts about Main Street Adoptions on November 18, 2009. The private Yahoo Group messages were not referenced in the complaint. According to his trial testimony, McClenaghan did not discover these posts until he joined the Yahoo Group in 2011. The complaint was never amended to include these posts.

During trial, Turi's lawyer moved to exclude any internet posts that were published more than a year prior to the filing of the complaint, arguing that they were excluded under Pennsylvania's statute of limitations on defamation actions and thus irrelevant and prejudicial. In response, Appellants' lawyer argued that because the statute

of limitations was an affirmative defense, all the posts attributed to Turi should be admitted and the jury should determine which posts had been published before November 18, 2008. Appellants' counsel also argued that even posts barred by the statute of limitations could be relevant to showing Turi's state of mind when she was alleged to have published later posts within the limitations period. The District Court allowed pre-November 18, 2008 posts to be introduced, but noted that it would give the jurors an instruction asking whether the defense had established that the statute of limitations barred posts made before November 18, 2008.

Appellants' counsel also argued that the discovery rule should toll the statute of limitations for the claims relating to posts that were published on the private Yahoo Group. Noting that the Yahoo Group rules prohibited adoption providers from becoming members or viewing content, Appellants' counsel alleged that the statute of limitations on the Yahoo Group posts should not have begun to run until 2011, when McClenaghan joined the Yahoo Group after the closure of Main Street Adoptions. The District Court determined as a matter of law that the discovery rule did not apply, as "the parties . . . had almost the same information before November '08" that they would later discover once joining the Yahoo Group. Supp. App. 15.

Finally, Appellants' counsel requested that the District Court instruct the jurors that claims for interference with contractual relations were subject to a two-year statute of limitations. The District Court declined to do so, reasoning that the claims for contractual interference were premised on "the same alleged defamatory statements," and therefore

4

"the one-year statute of limitations of defamation also applies to those claims." App. 104.

The District Court submitted the case to the jury on special verdict questions. The first question on the Verdict Sheet asked the jurors, "Do you find that Plaintiffs Robert McClenaghan and Nina Heller had knowledge of the allegedly defamatory statements posted by Defendant Melissa Turi in April 2008?" App. 155. Jurors were instructed that if they answered that question in the affirmative, then "the foreperson should sign and date this form and return it to the Courtroom." *Id*. Appellants' counsel objected to the charge, arguing that under Pennsylvania law "each new statement is independently actionable," with its own statute of limitations. App. 101. The District Court disagreed, concluding "if they knew in 2008, they had a year from say April of 2008 to bring the action." *Id*.

Consistent with this ruling, the District Court instructed the jurors:

> It is undisputed in this case that Plaintiffs' lawsuit was filed on November 18, 2009. The law requires that certain civil lawsuits be commenced within a certain prescribed period of time. The Plaintiffs' claims for defamation are subject to a one-year statute of limitations. The Plaintiffs' claim for trade libel is also subject to the one-year statute of limitations.
>
> Because the Plaintiffs' claim[s] for contractual interference are based on the same alleged defamatory statements, the one-year statute of limitations of defamation also applies to those claims. Accordingly, in order to find in favor of the Plaintiffs on any of their claims, you must determine that the Plaintiffs' lawsuit was initiated and filed with the court within one year of the time period when Plaintiffs had knowledge that the Defendant, Melissa Turi, posted allegedly defamatory statements on the internet.

> If you find that the Plaintiffs had knowledge of the alleged
> defamatory statements in April 2008, then all of Plaintiffs'
> claims are time barred and you must find in favor of the
> Defendant. If you find that the Plaintiffs did not have
> knowledge of the allegedly defamatory statements until
> November of 2008, then Plaintiffs' claims are not
> time barred and may be considered.

App. 104-05.

The jurors answered the statute of limitations question on the verdict form in the affirmative, finding that Appellants had knowledge of the purportedly defamatory internet posts in April 2008. The jury therefore did not reach the second and third questions, concerning whether Turi's statements had been defamatory and, if so, whether they had been truthful.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## A.

Appellants first argue that the jury charge was incorrect because it barred consideration of any claim based upon posts published by Turi after April of 2008. Appellants point to three posts introduced at trial that had been published less than a year before the complaint was filed. One of these, a post made on scamalert.com on November 28, 2008, appears to be a word-for-word copy of a post published on ripoffreport.com on April 8, 2008, outside of the limitations period. Another post was published within the private Yahoo Group on December 16, 2008 and described Main

6

Street Adoptions as "a very criminal agency." App. 126. Finally, Appellants allege Turi published a March 12, 2009 post on complaintsboard.com, which professed that she had "lost over 30,000 in a bate in switch [sic] baby scam" orchestrated by Main Street Adoptions. App. 125.

"The statute of limitations for defamation claims is one year from the date of publication." *In re Phila. Newspapers*, 690 F.3d 161, 174 (3d Cir. 2012) (citing 42 Pa. Cons. Stat. § 5523). Like many other states, Pennsylvania has adopted the "single publication rule," whereby:

> [n]o person shall have more than one cause of action for damages for libel or slander, or invasion of privacy, or any other tort founded upon any single publication, or exhibition, or utterance, such as any one edition of a newspaper, or book, or magazine, or any one presentation to an audience, or any one broadcast over radio or television, or any one exhibition of a motion picture.

42 Pa. Cons. Stat. § 8341(b). Pennsylvania established this rule in response to the concern that a contrary rule would render any statute of limitations "meaningless in that an action could be filed any time a defamatory article was read, no matter the time lag between the actual printing of the article and the reading of the article by a third party." *Graham v. Today's Spirit*, 468 A.2d 454, 457 (Pa. 1983). Although "Pennsylvania courts have not considered whether the single publication rule applies to Internet publication[,]" we recently predicted that Pennsylvania courts would extend the rule to "publicly accessible material on the Internet . . . ." *In re Philadelphia Newspapers,* 690 F.3d at

7

174. We noted that courts in many other single publication rule jurisdictions had already done so. *Id.*

The District Court's charge to the jury on the statute of limitations instructed that if they found that "the plaintiffs had knowledge of the alleged defamatory statements in April, 2008, then *all* of plaintiffs' claims are time barred and you must find in favor of the defendant."[1] App. 153-54 (emphasis added). The relevant triggering event for the statute of limitations in a defamation action under Pennsylvania law, however, is the *publication* of the defamatory communication by the defendant, not the point in time when the plaintiff first learns of the communication. *See Dominiak v. Nat'l Enquirer*, 266 A.2d 626, 629 (Pa. 1970). The publication of each communication constitutes a separate, potentially-tortious act, governed by its own statute of limitations. *See Graham*, 468 A.2d at 457 (noting that a newspaper would "commit[] a tortious act" each time it publishes a single defamatory article, giving rise to "separate causes of action").

The jury instruction was therefore an incorrect statement of the law. That the instruction was erroneous, however, does not end our inquiry. "[A] mistake in a jury instruction constitutes reversible error only if it fails to fairly and adequately present the issues in the case without confusing or misleading the jury." *Donlin v. Philips Lighting N. Am. Corp.,* 581 F.3d 73, 79 (3d Cir. 2009) (internal quotation omitted). In this case,

---

[1] In determining whether the jury charge stated the correct legal standard, we exercise plenary review. *United States v. Coyle*, 63 F.3d 1239, 1245 (3d Cir. 1995).

the jury instructions impermissibly precluded the jury from considering the posts made within one year of the filing of the lawsuit.

Significantly, the fact that one of the three posts attributed to Turi within the limitations period—the November 28, 2008 scamalert.com post—was identical to a post made outside the limitations period—the April 1, 2008 post on ripoffreport.com—does not foreclose liability on the latter post. Although the content of the two communications was identical, the November 2008 post could be independently actionable as a republication. "Republishing material (for example, the second edition of a book), editing and reissuing material, or placing it in a new form that includes the allegedly defamatory material, resets the statute of limitations." *In re Phila. Newspapers*, 690 F.3d at 174.

In *Graham*, the Pennsylvania Supreme Court confronted the question of whether identical articles published on the same day by two different newspapers constituted a single publication. 468 A.2d at 456. The Court held that the publication of the article in two distinct newspapers—*Today's Post* and *Today's Spirit*—constituted "two separate causes of action," regardless of the fact that both newspapers had the same publisher. *Id.* at 458. The Court distinguished this case from the situation that the single publication rule was designed to prevent, wherein "a multitude of lawsuits [could be] based on one tortious act," such as one newspaper publishing an article in one edition being held liable for a separate cause of action for each copy of that edition sold. *Id.* at 458. "[I]f the

9

defamatory statement is contained in two separate editions, then two separate causes of action exist." *Id*.

The November 28 post is therefore independently actionable, although it is identical to the April 2008 post, which is barred by the statute of limitations. To be found liable for the November 28 post, however, Turi herself must have been responsible for the republication of the content—it is not enough that the words were originally hers. If Turi's pre-limitations period ripoffreport.com post was copied and pasted onto scamalert.com by someone other than Turi, then Turi cannot be found liable for the republication, as Turi did not engage in any tortious conduct within the limitations period. On the other hand, if Turi herself "republished" her earlier ripoffreport.com post on scamalert.com, then Turi may be found liable despite the fact that she first posted the words more than a year before defendants brought suit.

The District Court's charge did not reflect that the publication of each post was a separate, potentially-tortious act, governed by its own statute of limitations. Instead, the instructions focused jurors' attention on when Appellants first learned of Turi's allegedly defamatory conduct. This precluded the jury from considering whether those posts published within the limitations period were defamatory. We will therefore vacate the jury's verdict and remand for further proceedings as to the three posts made within a year of November 18, 2009.

B.

Appellants next allege that the discovery rule should toll the statute of limitations on all posts that were published by Turi in the private Yahoo Group.[2] Under the discovery rule, the statute of limitations is tolled "where a party neither knows nor reasonably should have known of his injury and its cause at the time his right to institute suit arises." *Fine v. Checcio*, 870 A.2d 850, 859 (Pa. 2005). The Yahoo Group posts were only viewable by members who had joined the private group. Appellants claim they were unable to discover the posts within the limitations period, as the group rules precluded them from becoming members while they worked for an adoption agency.

Appellants' testified at trial that they were aware of the existence of negative online commentary published by Turi about Main Street Adoptions as early as April 2008. Even accepting Appellants' contention they could not have joined the private Yahoo Group while they maintained an adoption agency, they were on notice of the injury to their reputation and its source well before the November 18, 2009 filing of the complaint. Furthermore, the complaint did not include the Yahoo Group posts, even though Appellants could have joined the Yahoo Group as early as July 2009 when Main Street Adoptions closed. Therefore, this scenario does not present the type of "[w]orthy case[] . . . pertaining to hard-to-discern injuries" against which the discovery rule was designed to protect. *Wolk v. Olson*, 730 F. Supp. 2d 376, 378 (E.D. Pa. 2010). We

---

[2] Turi urges us to conclude that all of her Yahoo Group posts are statements of fact or opinion, which are non-defamatory as a matter of law. Not having the benefit of full briefing or a ruling from the District Court on this question, we will decline to reach the issue. The District Court should consider this on remand, having already had the benefit of a complete trial.

therefore find no error in the District Court's conclusion that, as a matter of law, the discovery rule did not toll the statute of limitations as to the private Yahoo Group posts.

C.

Finally, Appellants contend that the District Court erred in instructing jurors that the one-year statute of limitations for defamation claims applied as well to their intentional interference with prospective contracts claims. The District Court concluded that because "[Appellants'] claim [sic] for contractual interference are based on the same alleged defamatory statements, the one-year statute of limitations of defamation also applies to those claims." App. 104. Appellants maintain that the District Court should have instructed jurors that the intentional interference with contractual relations claims were governed instead by the two-year statute of limitations that can apply to such claims.

In *Evans v. Phila. Newspapers, Inc.*, the Pennsylvania Superior Court addressed the question of "whether a tortious interference claim, which is based upon identical allegations set forth in an accompanying defamation claim, should be considered duplicative and, as such, be barred by the one year statute of limitations applicable to defamation claims." 601 A.2d 330, 332 (Pa. Super. Ct. 1991). Reasoning that plaintiffs "should not be able to circumvent the statute of limitations by merely terming the claim tortious interference when in essence it is one of defamation," the court concluded that it would "look to the gravamen of the action, not to the label applied to it by plaintiffs." *Id.* at 333. Looking to the gravamen of the action brought by Appellants, we agree with the

District Court below that the one-year statute of limitations for defamation actions governs all of Appellants' claims. Because Appellants' "claim[s] for tortious interference [are] based upon the alleged false and defamatory character of the communication complained of," Appellants cannot circumvent the defamation statute of limitations by repackaging the same claims under a tortious interference theory. *Id.* at 334.

III.

For the foregoing reasons, we will affirm in part and vacate in part the judgment entered below, and remand this matter for further proceedings consistent with this opinion.